1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ALFRED E. DIXON, SR.,

         Petitioner

    v.

EDMUND G. BROWN, JR., et al.,

         Respondents.

Case No:  C 08-3832 SBA (PR)

**ORDER GRANTING IN PART AND DENYING IN PART RESPONDENTS' MOTION TO DISMISS PETITION; AND SETTING BRIEFING SCHEDULE**

Petitioner Alfred E. Dixon, Sr. filed the instant pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The parties are presently before the Court on Respondents' motion to dismiss the instant petition as untimely under the one-year limitations period prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d).  Alternatively, Respondents move to dismiss the petition for failure to exhaust available state judicial remedies.

Having read and considered the papers submitted and being fully informed, the Court GRANTS IN PART and DENIES IN PART Respondents' motion to dismiss the petition, and directs the parties to comply with the briefing schedule outlined below.

I.     **BACKGROUND**

On August 3, 2005, the Contra Costa County District Attorney charged Petitioner with committing a lewd and lascivious act on a child under 14 years-old.  Petitioner was accused of engaging in substantial sexual conduct with the victim; having a prior serious felony conviction; having a prior strike conviction; and having served a prior prison term.

The following evidence was presented at Petitioner's jury trial:

> On July 4, 2005, the 11-year-old victim was staying at the home of her adult cousin Anita.  Many others, including Anita's father, the defendant, were also spending the night there.  Anita testified that when she went to sleep at around 3:00 a.m. the victim, defendant and the other children were in the living room watching

television.  Sometime between 6:00 a.m. and 7:00 a.m. defendant woke Anita to ask for a cigarette.  She directed him to a pack of cigarettes by her bed and as defendant left the room he said something like "That little girl gonna come in here and say I tried to do something to her."  As soon as defendant left, the victim came into the bedroom, reporting "I got to tell you something . . . .  When I woke up, your daddy was sucking on me."  When asked where, the victim pointed to her vagina.  Anita called the police and reported the incident.

The victim testified that while watching television she had fallen asleep on the couch with the other children.  She was wearing her swimsuit bottom, jeans and a shirt.  Early in the morning, she was awakened to find that defendant had unbuttoned and unzipped her pants and partially pulled down her swimsuit bottom.  Defendant was on his knees licking the exposed part of her vagina.  The victim pushed defendant away.

Police Officer David Zuniga testified that he arrived at Anita's home shortly before 8:00 a.m. on July 5.  He took a brief statement from the victim, who appeared to be upset and looked as if she had been crying.  The victim was cooperative and although she began to cry when she described the incident, she was able to demonstrate the positions of defendant and herself during the incident.  On cross-examination, the officer stated that defendant was cooperative when asked to give a DNA sample, knowing the purpose for which the sample would be used.

Anita's 17-year-old cousin testified regarding a separate incident with defendant that occurred when she was staying with Anita in June.  She testified that she was watching television alone with defendant when he spontaneously asked if he could "suck on [her] pussy."  She was shocked and left the room.  Although she told Anita what defendant had said to her, the police were not called.

Susan R. testified to another incident involving defendant.  She testified that in 1996, when she was 14 years old, she was awakened around 3:00 a.m. to find a man kneeling over her by the side of her bed.  Her blankets had been pulled down and she felt the rim of the man's baseball cap moving up her thighs toward her vagina.  The man ran when she screamed, but she immediately recognized him as her father's friend and she identified defendant as the man who had been in her room that night.  Susan also testified that on the morning after this incident she discovered that some of her jewelry was missing.

Dkt. 8-2 at 3-4.[1]

On October 18, 2005, a jury found Petitioner guilty as charged.  In bifurcated proceedings on the prior serious felony conviction allegation, the jury received

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

United States District Court
Northern District of California

documentary evidence Petitioner had been convicted of first degree burglary in 1997 arising out of the 1996 incident about which Susan R. had testified.[2]  Dkt. 8-2 at 4.  The jury found true the prior serious felony conviction allegation.  Id.

On January 4, 2006, the trial court sentenced Petitioner to seventeen years in state prison.

Petitioner filed a direct appeal in the California Court of Appeal, and he raised the following two claims:

> (1) that "[t]he trial court erred prejudicially in excluding evidence that appellant was not held to answer for alleged prior sexual conduct that occurred in 1996"; and (2) that "[t]he trial court deprived appellant of due process of law when it instructed the jury that it could use appellant's alleged prior acts of sexual misconduct, proved by a preponderance of the evidence, as a proxy for proof beyond a reasonable doubt of the sexual offenses charged in the present case."

Dkt. 8 at 3.  On April 11, 2007, the state appellate court affirmed the judgment.

Petitioner then sought review in the California Supreme Court, where he raised only the second of the two claims from his direct appeal—i.e., that the trial court violated his right to due process by instructing the jury with CALJIC No. 2.50.01, which permits an inference of guilt on a charged sexual offense based on evidence of a past sexual offense.  Dkt. 8-3 at 5.  On June 20, 2007, the state supreme court denied review.

On July 21, 2008, Petitioner filed his initial habeas petition in this Court.  Dkt. 1.  Petitioner framed his claims in one paragraph under the section labeled "ground one," as follows:

> The state court's use of Evidence Code (EC) § 1108 to present incriminating evidence against Petitioner and then also use it to block his defense to this 1996 charge, conjoined with the jurys' [sic]

---

[2] While Petitioner sought to introduce evidence that he was "discharged" of any sexual-related offense arising out of the 1996 incident, the trial court refused to allow him to do so because he was not charged with any sexual offense.  Dkt. 8-2 at 5.  Instead, to rebut Susan R.'s testimony, the trial court permitted Petitioner to present evidence that he was charged with a burglary and not a sex offense.  Id.

> instruction with CALJIC 2.50.01, denied to Petitioner his fundamental constitutional right to present a meaningful defense to both the crime charged and the uncharged crime by: 1) denying him his right to confront his accuser; and 2) to present a meaningful defense to the crime.

Id. at 4.

On April 22, 2009, the Court ordered Respondents to show cause why the petition should not be granted.  Dkt. 6.

On August 21, 2009, Respondents moved to dismiss the petition as a mixed petition, containing both exhausted and unexhausted claims.  Dkt. 7.  Petitioner opposed the motion.  Dkt. 12.

On March 16, 2010, the Court granted the motion to dismiss, upon finding that only one federal claim was exhausted and the remaining claims were unexhausted.  Dkt. 17. Specifically, the Court noted that there was no dispute that Petitioner "fairly presented" to the California Supreme Court a portion of "ground one" based on instructional error; namely, the claim that the trial court violated his right to due process by instructing the jury with CALJIC No. 2.50.01.  Id. at 4 (citing Dkt. 8-3 at 5.)  However, the Court found Petitioner's remaining claims were unexhausted because they were not considered on the merits by the California Supreme Court.  Id. at 4.  Having concluded that Petitioner did not exhaust the remaining claims, the Court granted the motion to dismiss and ordered Petitioner to indicate his intentions with respect to the unexhausted claims.  Id. at 5.

Thereafter, on April 7, 2010, Petitioner filed a request for a stay of the proceedings while he completed the process of exhausting his unexhausted claims.  Dkt. 18.  On May 5, 2010, the Court granted Petitioner's motion to stay and administratively closed this action. Dkt. 20.

On June 8, 2010, Petitioner filed a state habeas petition in the California Supreme Court, raising the following two claims: (1) the district attorneys and the judge erred "by contaminating the jury with fake/untrue criminal history during jury trial proceedings . . . and fail[ed] to instruct the jury with the tru[e] facts of the case"; and (2) "While Anita Ebony Dixon was on the stand she committed perjury while testifying in court under oath,

4

United States District Court
Northern District of California

1   and committed a federal crime by destroying D.N.A. evidence knowingly . . . evidence that

2   would have proved [Petitioner's] innocence."  Dkt. 43 at 28-29.  On December 15, 2010,

3   the state supreme court denied the petition with a citation to In re Robbins, 18 Cal. 4th 770,

4   780 (1998). Id. at 35.

5        On February 17, 2011, Petitioner informed the Court that his state court proceedings

6   had concluded.  Dkt. 34.

7        On March 11, 2011, Petitioner filed a first amended petition ("FAP"), raising the

8   following three claims (with subclaims):

> (1)(a) the judge erred "by contaminating the jury with fake/untrue
> criminal history of [Petitioner] during jury trial proceedings,"
> (b) "fail[ed] to instruct the jury with the real facts," and (c) violated
> the "Double Jeopardy [Clause]";
>
> (2) ineffective assistance of counsel for "bring[ing] the 1996 case
> up"; and
>
> (3)(a) the trial court erred by excluding evidence that Petitioner was
> "not held to answer for alleged prior sexual conduct that occurred in
> 2005," (b) the trial court erred by using California Evidence Code §
> 1108 "to present incriminating evidence against [him] and then also
> use[d] it to blo[c]k [his] defense to [his] 1996 charge," and (c) the
> trial court violated his right to due process by instructing the jury
> with CALJIC No. 2.50.01 and denied him his right to confront his
> accuser and present a meaningful defense to the crime.[3]

Dkt. 37 at 6-7.

19       Thereafter, the Court granted Petitioner's motion to lift the stay and his apparent

20  motion for leave to file his FAP.  Dkt. 39.  The Court reopened this action and directed

21  Respondents to file an answer showing cause why a writ of habeas corpus should not be

22  issued.  Id. at 1-2.

23       In response, Respondents have filed the instant motion to dismiss.  Dkt. 43.  The

24  matter is fully briefed and is ripe for adjudication.  Dkts. 47, 48.

---

[3] Respondents incorrectly argue that Petitioner "does not raise the exhausted part of his original claim, which was based on CALJIC No. 2.50.01, as a claim in his amended petition."  Dkt. 43 at 6.  To the contrary, Petitioner raises this particular claim as Claim 3(c) in his FAP.  Dkt. 37 at 6-7.

II.     **DISCUSSION**

   A.     **Motion to Dismiss Claims as Untimely**

        i.     **Overview**

AEDPA, which became law on April 24, 1996, imposes a one-year statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  See 28 U.S.C. § 2244(d)(1).  Section 2241(d)(1) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run *from the latest of*—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A state prisoner with a conviction finalized after April 24, 1996, such as the case here, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end.  See id.  Under § 2241(d)(1)(A), "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).  Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.  See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (where

1  petitioner did not file petition for certiorari, his conviction became final ninety days after

2  the California Supreme Court denied review); Bowen, 188 F.3d at 1159 (same).

3      In the present case, the limitations period started running on September 18, 2007—

4  ninety days after the California Supreme Court denied review on June 20, 2007, when

5  Petitioner's sentence became final.  See id.  Petitioner thus had one year from the time the

6  limitations period started running—or until September 18, 2008—to file his federal habeas

7  petition, absent tolling.

8      Petitioner's Claims 3(b) and 3(c) are from his original petition filed on July 21,

9  2008.  Because those claims were filed two months before the limitations period expired,

10  they are timely.  However, the other claims—Claims 1, 2 and 3(a)—were raised for the

11  *first time* in the FAP filed on March 11, 2011, almost two-and-a-half years after the

12  limitations period expired.[4]  As such, these claims are time-barred unless statutory or

13  equitable tolling applies.

14      ii.    **Tolling**

15      AEDPA's one-year limitation period is subject to statutory tolling for the "time

16  during which a properly filed application for State post-conviction or other collateral

17  review with respect to the pertinent judgment or claim is pending."  28 U.S.C.

18  § 2244(d)(2).  However, statutory tolling is inapplicable here.  By the time Petitioner filed

19  his state habeas petition (on June 8, 2010) containing the newly-asserted claims, the one-

20  year limitation period had already expired as of September 18, 2008.  Once the statute of

21  limitations on a claim has run, statutory tolling is no longer available.  See Ferguson v.

22  Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir.

23  2001).  Therefore, the Court finds that Claims 1, 2 and 3(a) are not subject to statutory

24  tolling.

25      Aside from statutory tolling, the AEDPA limitations period may be equitably tolled

26  "if extraordinary circumstances beyond a prisoner's control make it impossible to file a

27  _____

28  [4] Based on the record presented, there is no basis for application of a later time period for the statute to commence under § 2241(d)(1)(B), (C) or (D).

petition on time." <u>Beeler</u>, 128 F.3d at 1288.  The prisoner "must show that the 'extraordinary circumstances' were the cause of his untimeliness." <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).  He must also show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance stood in [his] way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).  Here, Petitioner does not argue that there is any basis for equitable tolling or allege any facts showing that equitable tolling applies to his newly-alleged claims, nor is any basis therefor apparent from the record.  As such, the Court finds no basis to equitably toll the statute of limitations.  <u>See</u> <u>Miranda v. Castro</u>, 292 F.3d 1063, 1065 (9th Cir. 2002) (prisoner "bears the burden of showing that this extraordinary exclusion should apply to him").

### iii.    Relation Back

Pleading amendments made after AEDPA's one-year limitation period has run relate back to the date of the original pleading if the original and amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" <u>Mayle v. Felix</u>, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(c)(2)).  "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Id.</u> at 650.  Only if the original and amended petition state claims that are tied to a common core of operative facts will relation back be in order.  <u>Id.</u> at 664.

As noted, the new claims are set forth in Claims 1, 2 and 3(a).  Claim 1 alleges that the trial court erred by (a) contaminating the jury with his "fake/untrue" criminal history; (b) failing to instruct the jury with the fact that he had never been charged and convicted of any type of "sex crimes/acts"; and (c) violating the constitutional protections against "Double Jeopardy."  Dkt. 38 at 6.  Of these three subclaims, only 1(a) and 1(b) relate back to the due process claims made in the original petition.  In contrast, the Double Jeopardy claim in 1(c) is not tied to the "common core of operative facts" that form the claims in the original petition.  <u>Mayle</u>, 545 U.S. at 650, 664 (finding that new coerced confession claim

United States District Court
Northern District of California

did not relate back to the original petition that raised only a factually distinct Confrontation Clause claim).

In Claim 2, Petitioner alleges that his counsel was ineffective for "bring[ing] the 1996 case up" in spite of Petitioner instructing his attorney not to do so because it violated the "Double Jeopardy [Clause]." Dkt. 38 at 6. None of the claims in the original petition rest upon or pertain to Petitioner's attorney presenting evidence relating to the "1996 case." As a result, Petitioner's new claim for ineffective assistance of counsel does not relate back because it does not arise from facts underlying the claims alleged in the original petition. See Mayle, 545 U.S. at 650.

Finally, in Claim 3(a), Petitioner claims the trial court erred in excluding evidence that he was "not held to answer" for the alleged 2005 prior sexual conduct involving Anita's 17-year old cousin. Dkt. 37 at 6. This claim is unrelated to the claims alleged in the original petition, which involved prior sexual conduct from 1996. Because Claim 3(a) asserts a new ground for relief supported by facts "that differ in both time and type" from the original petitioner, the relation back doctrine is inapt. Mayle, 545 U.S. at 650.

To summarize, the Court finds that Claims 1(a), 1(b), 3(b) and 3(c) relate back and thus are timely, and therefore, Respondent's motion to dismiss as to those claims is DENIED. However, Claims 1(c), 2 and 3(a) do not relate back and are untimely, and as such, Respondent's motion to dismiss those claims is GRANTED.

**B.     Motion to Dismiss Claims as Unexhausted**

The Court now turns to Respondents' alternative exhaustion argument as to Claims 1(a), 1(b), 3(b) and 3(c), which the Court has found to be timely. As to the instructional error alleged in Claim 3(c), Respondents acknowledge that it is exhausted. Therefore, the remaining issue before the Court is whether Claims 1(a), 1(b) and 3(b) are exhausted.

An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court may not be granted unless the prisoner has first exhausted state judicial remedies, either by way of a direct appeal or in collateral proceedings, by presenting the highest state court available with a fair opportunity to rule

on the merits of each and every issue he or she seeks to raise in federal court.  See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  The petitioner has the burden of pleading exhaustion in his or her habeas petition.  See Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).

As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts in the manner required by the state courts, thereby affording the state courts a meaningful opportunity to consider allegations of legal error.  Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).  A claim is "fairly presented" only if the petitioner either referenced specific provisions of the federal constitution or federal statutes, or cited to federal or state case law analyzing the federal issue.  Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  The specific factual basis of the federal claim also must be presented to the highest state court.  Kelly v. Small, 315 F.3d 1063, 1067-69 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007).  The exhaustion requirement also may be satisfied if no state remedy remains available.  See Casey, 386 F.3d at 920; Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).

In ruling on Respondents' earlier motion to dismiss, the Court found that only Petitioner's instructional error claim (now styled as Claim 3(c)) was exhausted.  His other carry-over claim, based on the erroneous admission of incriminating evidence (now styled as Claim 3(b)), was found to be unexhausted.  Dkt. 17.  Thereafter, the Court afforded Petitioner the opportunity to return to state court to exhaust any unexhausted claims to the California Supreme Court.  Petitioner's new state supreme court habeas petition did not allege Claim 3(b).  Therefore, the Court finds Claim 3(b) is unexhausted.

Petitioner's new state supreme court habeas petition presented two *new* claims that were not in the original petition: (1) the judge and prosecutor contaminated the jury with "fake/untrue criminal history during jury trial proceedings" and failed to "instruct the jury with the tru[e] facts of the case"; and (2) Anita Ebony Dixon committed perjury and a federal crime by "destroy[ing] D.N.A. evidence."  Dkt. 43 at 28-29.  The first of these two

10

claims is identical to Claims 1(a) and 1(b) from the FAP; however, the second claim was not raised in the FAP.

The California Supreme Court denied the petition with a citation to <u>In re Robbins</u>, indicating that the petition was untimely and that the state supreme court did not resolve the claims on the merits.  <u>See</u> <u>Thorson v. Palmer</u>, 479 F.3d 643, 645 (9th Cir. 2007) (holding that a California court's citation to <u>In re Robbins</u> is a clear ruling that the petition was untimely).[5]  Therefore, this Court finds that Claims 1(a) and 1(b) are unexhausted because they were not considered on the merits by the California Supreme Court.

Having concluded that Petitioner did not exhaust the aforementioned claims in the FAC, the Court GRANTS Respondents' motion to dismiss the petition as unexhausted as to remaining Claims 1(a), 1(b), and 3(b).  These claims are DISMISSED as unexhausted. The Court DENIES the motion as to exhausted Claim 3(c), the only remaining claim, and the parties are directed to abide by the briefing schedule outlined below.

## III.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Respondents' motion to dismiss the petition (Dkt. 43) is GRANTED IN PART AND DENIED IN PART, as explained above.

2.     No later than **twenty-eight (28) days** of the date of this Order, Respondents shall file with the Court and serve on Petitioner, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted as to the only remaining claim—Claim 3(c).

---

[5] Pursuant to <u>Thorson</u>, the citation to <u>In re Robbins</u>, 18 Cal. 4th at 780 (as was the case here), suggests that the state supreme court petition was denied based on untimeliness because the state supreme court cited to the page in <u>In re Robbins</u> that discusses timeliness determinations.  <u>See</u> <u>Thorson</u>, 479 F.3d at 645.

United States District Court
Northern District of California

1    If Petitioner wishes to respond to the answer, he shall do so by filing a traverse with

2    the Court and serving it on Respondents within **twenty-eight (28) days** of his receipt of

3    the answer.  Should Petitioner fail to do so, the petition will be deemed submitted and

4    ready for decision **twenty-eight (28) days** after the date Petitioner is served with

5    Respondents' answer.

6    3.    It is Petitioner's responsibility to prosecute this case.  Petitioner must keep

7    the Court and Respondents informed of any change of address and must comply with the

8    Court's orders in a timely fashion.  Petitioner must also serve on Respondents' counsel all

9    communications with the Court by mailing a true copy of the document to Respondents'

10   counsel.

11   4.    Any motion for an extension of time must be filed no later than **fourteen**

12   **(14) days** prior to the deadline sought to be extended.  **No extensions shall be granted in**

13   **this action absent exigent circumstances.**

14   5.    This Order terminates Docket No. 43.

15   IT IS SO ORDERED.

16   Dated:   January 7, 2015

17   SAUNDRA BROWN ARMSTRONG
     Senior United States District Judge

18   P:\PRO-SE\SBA\HC.08\Dixon3832.grantIP&denyIP-MTD&briefSCHED-rev.docx

*United States District Court*
*Northern District of California*

12

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   ALFRED E. DIXON,                          Case No.  08-cv-03832-SBA

            Plaintiff,
8
                                              **CERTIFICATE OF SERVICE**
        v.
9
    EDMUND G. BROWN, et al.,
10
            Defendants.
11

12          I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S.
    District Court, Northern District of California.
13

14          That on 1/7/2015, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
15  said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
    located in the Clerk's office.
16

17  Alfred E. Dixon ID: F-11362
    California Health Care Facility (CHCF)
18  P.O. Box 32200
    Stockton, CA 95213
19

20

21  Dated: 1/7/2015

22

23                                            Richard W. Wieking
                                              Clerk, United States District Court
24

25

26                                            By:_____
                                              Nikki D. Riley, Deputy Clerk to the
27                                            Honorable SAUNDRA BROWN ARMSTRONG

28

13