UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ALFRED E. DIXON,

      Petitioner,

   vs.

EDMUND G. BROWN, JR. and
BRIAN DUFFY, Warden,[1]

     Respondents.

Case No:  C 08-03832 SBA (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

     Petitioner Alfred E. Dixon ("Petitioner") brings the instant pro se habeas action under 28 U.S.C. § 2254 to challenge his 2005 conviction for committing a lewd and lascivious act on a child under 14 years-old.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the Amended Petition for the reasons set forth below.

I.    **BACKGROUND**

    A.    **STATEMENT OF FACTS**

     On August 3, 2005, the Contra Costa County District Attorney charged Petitioner with committing a lewd and lascivious act on a child under 14 years-old.  Petitioner was accused of engaging in substantial sexual conduct with the victim; having a prior serious felony conviction; having a prior strike conviction; and having served a prior prison term.

---

[1] Brian Duffy, the current warden of the prison where Petitioner is incarcerated, has been substituted in the place of T. Felker as one of the Respondents pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

The following evidence was presented at Petitioner's jury trial:

On July 4, 2005, the 11-year-old victim was staying at the home of her adult cousin Anita. Many others, including Anita's father, the defendant, were also spending the night there. Anita testified that when she went to sleep at around 3:00 a.m. the victim, defendant and the other children were in the living room watching television. Sometime between 6:00 a.m. and 7:00 a.m. defendant woke Anita to ask for a cigarette. She directed him to a pack of cigarettes by her bed and as defendant left the room he said something like "That little girl gonna come in here and say I tried to do something to her." As soon as defendant left, the victim came into the bedroom, reporting "I got to tell you something . . . . When I woke up, your daddy was sucking on me." When asked where, the victim pointed to her vagina. Anita called the police and reported the incident.

The victim testified that while watching television she had fallen asleep on the couch with the other children. She was wearing her swimsuit bottom, jeans and a shirt. Early in the morning, she was awakened to find that defendant had unbuttoned and unzipped her pants and partially pulled down her swimsuit bottom. Defendant was on his knees licking the exposed part of her vagina. The victim pushed defendant away.

Police Officer David Zuniga testified that he arrived at Anita's home shortly before 8:00 a.m. on July 5. He took a brief statement from the victim, who appeared to be upset and looked as if she had been crying. The victim was cooperative and although she began to cry when she described the incident, she was able to demonstrate the positions of defendant and herself during the incident. On cross-examination, the officer stated that defendant was cooperative when asked to give a DNA sample, knowing the purpose for which the sample would be used.

Anita's 17-year-old cousin testified regarding a separate incident with defendant that occurred when she was staying with Anita in June. She testified that she was watching television alone with defendant when he spontaneously asked if he could "suck on [her] pussy." She was shocked and left the room. Although she told Anita what defendant had said to her, the police were not called.

1
2
3
4
5
6

> Susan R. testified to another incident involving defendant. She testified that in 1996, when she was 14 years old, she was awakened around 3:00 a.m. to find a man kneeling over her by the side of her bed. Her blankets had been pulled down and she felt the rim of the man's baseball cap moving up her thighs toward her vagina. The man ran when she screamed, but she immediately recognized him as her father's friend and she identified defendant as the man who had been in her room that night. Susan also testified that on the morning after this incident she discovered that some of her jewelry was missing.

7
8

People v. Dixon, 2007 WL 1068211, *1-2 (Cal. Ct. App. Apr. 11, 2007) (footnotes omitted).

9

### B.   CASE HISTORY

10
11
12
13
14
15

On October 18, 2005, a jury found Petitioner guilty as charged. Id. at *2. In bifurcated proceedings on the prior serious felony conviction allegation, the jury received documentary evidence Petitioner had been convicted of first degree burglary in 1997 arising out of the 1996 incident about which Susan R. had testified. Id. The jury found true the prior serious felony conviction allegation. Id. On January 4, 2006, the trial court sentenced Petitioner to seventeen years in state prison. Id.

16
17

Petitioner filed a direct appeal in the California Court of Appeal, and on April 11, 2007, the state appellate court affirmed the judgment. Id. at *3.

18
19

Petitioner then sought review in the California Supreme Court, and on June 20, 2007, the state supreme court denied review. Dkt. 43, Exs. A, B.

20

On July 21, 2008, Petitioner filed his initial habeas petition in this Court. Dkt. 1.

21
22
23

On March 16, 2010, the Court granted Respondents' motion to dismiss the petition as a mixed petition, upon finding that only one federal claim—his instructional error claim—was exhausted and the remaining claims were unexhausted. Dkt. 17.

24
25
26
27

On May 5, 2010, the Court stayed the instant habeas proceedings to allow Petitioner to exhaust state judicial remedies as to his unexhausted claims. Dkt. 20. This case was administratively closed pending Petitioner's receipt of a final decision from the highest state court. Petitioner then moved to re-open the action and lift the stay.

28

On March 11, 2011, Petitioner filed an Amended Petition, raising three claims with subclaims.  Thereafter, the Court granted Petitioner's motion to lift the stay and his apparent motion for leave to file his Amended Petition.  Dkt. 39.  The Court reopened this action and directed Respondents to file an answer showing cause why a writ of habeas corpus should not be issued.  Id. at 1-2.

In response, Respondents moved to dismiss the claims in the Amended Petition as untimely and for failure to exhaust state remedies.  Dkt. 43.

On January 7, 2015, the Court granted in part and denied in part Respondents' motion to dismiss.  Dkt. 55.  The Court denied the motion as to Petitioner's instructional error claim, which was previously found to be exhausted.  Id. at 11.  The Court granted the motion as to all other claims in the Amended Petition upon determining that they were either untimely or unexhausted.  Id. at 6-11.  Therefore, the Court directed Respondents to file an answer showing cause why a writ of habeas corpus should not be granted as to the only remaining claim in the Amended Petition—the instructional error claim.  Id. at 11.

Respondents have filed an answer.  Dkt. 56.  Petitioner has filed a traverse.  Dkt. 59.  Briefing is now closed and the petition is ripe for adjudication.

## II.  **LEGAL STANDARD**

The instant Amended Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks

omitted).  Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  The last reasoned decision in this case is the Court of Appeal's unpublished disposition issued on April 11, 2007.

## III.   **DISCUSSION**

Petitioner contends that the trial court violated his due process rights when it incorrectly instructed the jury with the 2002 revised version of CALJIC No. 2.50.01, Evidence of Other Sexual Offenses.  That instruction explained the permissible uses of the evidence of Petitioner's prior sex acts to show propensity under California Evidence Code § 1108.  CALJIC No. 2.50.01 stated:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case.
>
> "Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following:
>
> Any conduct made criminal by Penal Code section 288(c)(1)-664, attempted lewd act upon child age 14 or 15.  The elements of this crime are set forth elsewhere in these instructions.
>
> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did

commit the crime or crimes of which he is accused.

However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

CT 157-158.

The jury was also instructed with CALJIC No. 2.50.1, Evidence of Other Crimes by the Defendant Proved by a Preponderance of the Evidence, which stated:

Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a sexual offense and/or an act similar to that constituting a crime, other than that for which he is on trial.

You must not consider this evidence for any other purpose unless you find by a preponderance of the evidence that the defendant committed the other sexual offense and/or an act similar to that constituting a crime.

If you find the other sexual offense and/or act similar to that constituting a crime were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime.

CT 162.

The jury was also instructed with CALJIC No. 2.50, Evidence of Other Crimes, which stated:

Evidence has been introduced for the purpose of showing that the defendant committed acts similar to those constituting a crime, other than that for which he is on trial.

Except as you will otherwise be instructed, this evidence, if believed, may not be considered by you to prove that the defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show:

**1**
**2**
**3**

   A characteristic method, plan, or scheme in the commission of criminal acts similar to the method, plan, or scheme used in the commission of the offense in this case which would further tend to show the existence of the intent which is a necessary element of the crime charged.

**4**
**5**

   For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in this case.

**6** CT 156.

**7**   Prior to Susan R. taking the stand to testify about the 1996 incident, the trial court

**8** again instructed the jury that it could not consider her testimony to prove that Petitioner

**9** was a "person of bad character."  RT 212.  Instead, the court instructed the jury to consider

**10** it for the limited purpose of determining if it tends to show "a characteristic method, plan or

**11** scheme in the commission of a criminal act similar to the method, plan or scheme used in

**12** the commission of the offense in this case," or to show an inference that Petitioner "had a

**13** disposition to commit sexual offenses."  RT 212.  The state court of appeal relied on state

**14** law, specifically People v. Reliford, 29 Cal. 4th 1007 (2003), in finding that the challenged

**15** jury instruction met constitutional requirements.  Dixon, 2007 WL 1068211, *3 n.2.

**16**   Jury instructions on prior uncharged offenses may violate due process where they

**17** lessen the prosecution's burden of proof by allowing the "jury to find that [petitioner]

**18** committed the uncharged [offenses] by a preponderance of the evidence and thus to infer

**19** that he had committed the charged acts based upon facts found not beyond a reasonable

**20** doubt, but by a preponderance of the evidence."  Gibson v. Ortiz, 387 F.3d 812, 822 (9th

**21** Cir. 2004) (emphasis in original) overruled in part on other grounds by Byrd v. Lewis, 566

**22** F.3d 855, 866 (9th Cir. 2009).  A jury may, however, infer that a defendant committed the

**23** charged crime based on previous, uncharged crimes, as long as those previous offenses

**24** were proven beyond a reasonable doubt.  Gibson, 387 F.3d at 822.

**25**   In Gibson, the Ninth Circuit held that an unmodified 1996 version of CALJIC No.

**26** 2.50.01, in tandem with a modified version of an instruction regarding the preponderance of

**27** the evidence standard, unconstitutionally lowered the prosecution's burden of proof for the

**28** charged sexual offenses to a preponderance of the evidence standard.  Id. at 822-23.  Since

then, however, CALJIC No. 2.50.01 has been revised several times.  The California Supreme Court has upheld the revised instruction, stating, "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof."  Reliford, 29 Cal. 4th at 1015.

Just as the California Supreme Court found the more recent version of the jury instruction to be proper in Reliford, the Ninth Circuit reached a similar conclusion in Schultz v. Tilton, 659 F.3d 941 (9th Cir. 2011).  In Schultz, the Ninth Circuit held that "the California Court of Appeal did not act contrary to federal law in applying the analysis from Reliford to uphold the 2002 version of CALJIC No. 2.50.01."  Id. at 945.  Distinguishing the 2002 version of CALJIC No. 2.50.01 from the 1996 version at issue in Gibson, the Ninth Circuit noted that the 2002 version "in no way suggest[ed] that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence," but rather "made clear that Schultz could be convicted only if the evidence as a whole "proved [him] guilty beyond a reasonable doubt of the charged crime."  Id.

The instruction in the instant case is the same instruction that was found proper in Schultz, and it contained the necessary language described above.  Compare CT 157-158, with Schultz, 659 F.3d at 943.  After reviewing this instruction, it is evident that it was constitutionally appropriate and did not lower the burden of proof.  Thus, Petitioner is not entitled to relief.  Therefore, this claim is DENIED.

## IV.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's instructional error claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

## V.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      The remaining instructional error claim in the Amended Petition is DENIED, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.      The Clerk of the Court shall terminate any pending matters and close the file.

IT IS SO ORDERED.

Dated:  2/8/16

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

P:\PRO-SE\SBA\HC.08\Dixon3832.denyHC.docx